# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
August 22, 2000 Session

## STATE OF TENNESSEE v. CORNELIUS MICHAEL HYDE

**Appeal from the Circuit Court for Blount County**
**No. C-10230     D. Kelly Thomas, Jr., Judge**

_____

**No. E2000-00042-CCA-R3-CD**
**December 28, 2000**
_____

JOSEPH M. TIPTON, J., concurring and dissenting.

I concur in the reasoning and most of the results reached in the majority opinion. I depart only in my opinion that the failure to instruct on aggravated assault constitutes reversible error.

First, I believe that we need to begin by recognizing the significance of State v. Ducker, 27 S.W.3d 889 (Tenn. 2000), in the extent that it limits the culpable mental state of "knowing" needed for the offense of child abuse. The offense of child abuse is committed by a "person who knowingly, other than by accidental means, treats a child under eighteen (18) years of age in such a manner as to inflict injury or neglects such a child so as to adversely affect the child's health and welfare." Tenn. Code Ann. § 39-15-401(a). In Ducker, the defendant's two young children died after being left in their car seats in the car for more than eight hours during hot weather. Convicted of aggravated child abuse, the defendant argued that the mens rea of "knowing" applied to the injury prong as well as the treatment and neglect prongs of the child abuse statute. However, our supreme court disagreed, concluding that the "mens rea of 'knowing' refers only to the conduct elements of treatment or neglect of a child under the child abuse statute," thus concluding that child abuse is not a result-of-conduct offense. 27 S.W.3d at 897.

In reaching its conclusions, the supreme court viewed "knowingly" in the statute as clearly modifying "treats" and "neglects," noting as well that the "actus reus" is modified by the clause "'other than by accidental means.'" The court then stated the following:

> Accordingly, the statute requires that the act of treating a child in an abusive manner or neglecting the child must be knowing conduct. For instance, [Ducker] must have knowingly left or abandoned her children in the car for more than eight hours. If the defendant had been unaware that her children were present in the car when she left her car parked in front of the hotel, the neglect of her children would have been accidental or unknowing. Contrary to the defendant's assertions, application of the

mens rea to the actus reus of this statute precludes this statute from being a strict liability statute.

Once the knowing mens rea is established, the next inquiry under the plain language of the statute is simply whether the child sustained an injury or, in the case of child neglect, whether the child suffered an adverse effect to the child's health or welfare. The legislature has employed the phrases "so as to injure" and "so as to adversely affect" when defining the injury aspect of the child abuse statute. These phrases clearly indicate that if an injury results from knowing abuse or neglect, the actor has committed child abuse.

As a practical matter, the defendant's argument could render the child abuse statute ineffectual. Defendants in child abuse cases could argue that, while they in fact knowingly punished or spanked the child, they did not know harm would occur. We, therefore, reject the defendant's argument and hold that the mens rea of "knowing" refers only to the conduct elements of treatment or neglect of the child under the child abuse statute and conclude that the child abuse offenses are not a result – of – conduct offenses.

27 S.W.3d at 897.

Strictly construed, Ducker stands for the proposition that no mens rea attaches to the occurrence of an injury, only to the treatment that results in injury. If such be so, then the defendant in the present case would not be entitled to a jury instruction on aggravated assault. This is because no question exists about the defendant knowing he was spanking or hitting the victim. Thus, whatever ignorance or level of awareness he claimed to have regarding the injuries that resulted from his spanking the victim would be wholly irrelevant.

However, several points militate against such a limited interpretation of Ducker. The first point relates to the fact that another part of the child abuse statute refers to an allegation "that unreasonable corporal punishment was administered" to a child by a "parent, guardian or custodian." Tenn. Code Ann. § 39-15-401(b)(1). The necessary implication by the legislature's use of these words is that reasonable corporal punishment by a child's parent, guardian or custodian does not fall within the ambit of child abuse. To conclude otherwise would render a parent's disciplining a child by corporal punishment a thing of the past. Bodily injury "includes a cut, abrasion, bruise, burn or disfigurement; physical pain or temporary illness or impairment of the function of a bodily member, organ, or mental faculty." Tenn. Code Ann. § 39-11-106(a)(2). Needless to say, the discipline of spanking is intended to have a painful result. However, we also note that a statute provides that teachers and school principals "may use corporal punishment in a reasonable manner against any pupil for good cause in order to maintain discipline and order within the public schools." Tenn. Code Ann. § 49-6-4103. I seriously doubt that the legislature intended for parents, guardians and custodians to be criminally liable for corporal punishment that would be condoned for use by school principals.

With the existence of lawful corporal punishment, what remains is a consideration of what constitutes "unreasonable corporal punishment." Given the fact that the nature of corporal punishment is that it is intentionally or, at least, knowingly done, the determination of reasonableness must include consideration of the actor's level of awareness relative to the conduct, the circumstances surrounding the conduct, and the resulting injury. In this respect, I do not believe that a parent may be held liable for child abuse unless it is shown that the parent, at least, should have known that the conduct, the circumstances surrounding the conduct or the result – those matters that make up corporal punishment –  was unreasonable.

Relative to the present case, a question arises regarding whether the defendant, who is the live-in boyfriend of the victim's mother, is to be considered a guardian or custodian of the victim as those terms are used in the child abuse statute. When viewed as a matter of fact, if the victim's mother had entrusted the victim to the defendant's care, then the defendant could be said to have physical custody of the victim. Under these circumstances, the defendant cannot be liable for reasonable corporal punishment and the jury should have been so instructed.

The second point relates to the fact that in Ducker, the supreme court did not consistently limit the "knowing" mens rea to the treatment of the victim. It stated that "the statute requires that the act of treating a child in an abusive manner . . . must be knowing conduct." 27 S.W.3d at 897 (emphasis added). It also referred to the injury resulting from "knowing abuse." Id. In other words, the court implied that more is required than just knowing treatment of a child that results in injury. However, when knowing treatment constitutes knowing abuse is left unstated. We recognize that our supreme court has stated that the child abuse statute should be read in pari materia with other provisions sharing the same subject matter and purpose and that statutory construction should involve considering the other statutes. State v. Adams, 24 S.W.3d 289, 295-96 (Tenn. 2000). In this respect, we note that regarding juveniles and juvenile court proceedings, "abuse" is deemed to exist "when a person under the age of eighteen (18) is suffering from, has sustained, or may be in immediate danger of suffering from or sustaining a wound, injury, disability or physical or mental condition caused by brutality, neglect or other actions or inactions of a parent, relative, guardian or caretaker." Tenn. Code Ann. § 37-1-102(b)(1). On the other hand, the child abuse statute limits the result to actual injury. In this respect, a "knowing" abusive treatment necessarily entails awareness that the risk of injury results from the conduct. In other words, by saying that a defendant must know that his treatment of a child is in an abusive manner, the supreme court necessarily implies that some level of mental culpability regarding the circumstances surrounding the conduct and the potential result must exist, even if the actual injury or its extent need not be known for the defendant to be guilty of child abuse.

In any event, I believe that the facts in the present case would justify an instruction on aggravated assault regarding the issue of abuse. Considering it in the light most favorable to the defendant, I believe that the evidence would easily cast a reasonable doubt as to the defendant's knowledge that his treatment of the victim was abusive. Thus, the jury should have been instructed regarding aggravated assault.

I believe that the failure to instruct the jury regarding the next lesser-included offense that the evidence would support to exist – as opposed to the greater offense – violates due process and the state constitutional right to have the jury determine what facts make out what crime. See Tenn. Const. art. IV, § 9. When the evidence, in the light most favorable to the lesser-included offense, supports a conviction for the lesser offense, as opposed to the greater offense, the failure of the trial court to instruct on the lesser operates as an improper determination by the trial court as to a matter of fact.

Thus, the failure to instruct on lesser-included offenses in the present case constituted error of a constitutional dimension. Such error places the burden upon the party who benefitted from it, in this case the state, to show that the error was harmless beyond a reasonable doubt. I do not believe that the state has met its burden in this case. Therefore, I would reverse the conviction and remand the case to the trial court for a new trial.

_____
JOSEPH M. TIPTON, JUDGE